317 So.2d 842 (1975)
STATE of Florida, Appellant,
v.
Roy D. BELCHER and Verdell Teal, Appellees.
No. 75-125.
District Court of Appeal of Florida, Second District.
August 27, 1975.
*843 Robert L. Shevin, Atty. Gen., Tallahassee, and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellant.
G. Robert Schultz, St. Petersburg, for appellee Teal.
F.M. Wells, Jr., St. Petersburg, for appellee Belcher.
GRIMES, Judge.
The state appeals an order granting defendants' motions to suppress. We reverse.
Defendants were charged with breaking and entering with intent to commit grand larceny after jewelry allegedly taken in a burglary was found in their possession. At the hearing on the motions to suppress, Sergeant Henseley of the St. Petersburg Police Department testified that on October 3, 1974, at approximately 9:30 p.m., he and his partner, Officer Lewis, were on routine patrol when they were ordered to the vicinity of 11th Avenue South and 39th Street to investigate a burglary. Henseley testified that as he drove south on 40th Street, he observed three men sitting on a couch on the porch of a residence. Henseley stated:
"The porch was very well lit. We were approximately 25 to 30 feet away when I first glanced over. And when I glanced over, the subject in the middle had a red box in his lap, open, was looking into it, and had his hands in it. The subjects on either side were both looking into the box, also. At approximately the same time I made eye contact, or shortly thereafter, the subject with the red box shut the box and very deliberately put it between his legs."
Henseley, an officer with seven years experience and a veteran of approximately one hundred drug-related arrests, testified that he suspected a drug transaction was taking place. He stated that based on prior observations of other persons handling marijuana he believed the subject in *844 the middle [defendant Belcher] to be rolling a marijuana cigarette or dividing up some marijuana.
Henseley backed his cruiser up and pulled into the front yard. He explained that there was no fence and that the yard was "the type that people park on ... mostly dirt and scrub grass." Henseley and Officer Lewis then walked to the front porch. There, both officers observed jewelry scattered about on the couch. Henseley then contacted the burglary scene by portable radio and was advised that jewelry and a red jewelry box had been taken. The officers placed defendants under arrest and seized the jewelry.
Officer Lewis testified that when the cruiser passed the house, she saw defendants handling jewelry. She stated that defendant Belcher put the box between his legs, "just as we passed him, and he noticed that we were turning around and looking at him." Officer Lewis testified:
"I just thought it was a little suspicious that at that time of night, you know, three males were going through jewelry out on the porch."
The state concedes that the officers lacked probable cause to arrest defendants before going on the property. It is clear, however, that upon observing the jewelry and contacting the burglary scene the officers did have probable cause to arrest the defendants. The question we must resolve, then, is: Did the officers, by observing and then seizing the jewelry, violate the defendants' Fourth Amendment rights against unreasonable search and seizure?
Defendants contend that the officers were trespassers and, therefore, the "search" and subsequent seizure which they made were unlawful. We reject these claims.
In the first place, we do not believe the officers were trespassers. In Foster v. United States, 5th Cir.1962, 296 F.2d 65, appellant was charged with interfering with United States officials engaged in the performance of their duties. Two F.B.I. agents went to the defendant's Duval County home to question him in connection with an investigation. They walked up the front steps and onto the porch, rang the doorbell and knocked. When appellant opened the door and the agents identified themselves, appellant ordered them off the property. When the agents requested a brief interview, appellant re-entered his home, picked up a rifle and pointed it at the agents. In affirming appellant's conviction, the court rejected his claim that because he had ordered other agents off his property on prior occasions the agents recently on his premises were trespassers. The court said:
"... We proceed, therefore, on the premise that the original approach, the knocking at the door, the inquiry of appellant as to his identity, were all actions which were protected under the principle that `when the performance of his duty requires an officer of the law to enter upon private property, his conduct, otherwise a trespass, is justifiable.' See Giacona v. United States, 5 Cir., 257 F.2d 450, 456, and see 52 Am.Jur., Trespass, Sec. 41."
It is worth noting that in negligence law a policeman entering upon private premises in the discharge of his duties is classified as a "licensee." 13 A.L.R. 637, 646 (1921). By way of obiter dicta, the Supreme Court in Fred Howland, Inc. v. Morris, 1940, 143 Fla. 189, 196 So. 472, stated:
"... Defendant cites many cases dealing with firemen and policemen, where the courts have almost uniformly held that such officers are licensees. The theory  and it is a correct one  upon which such holdings are based is that of overwhelming necessity... ." (Emphasis added.)
Sergeant Henseley and Officer Lewis were on routine patrol when they observed *845 what they considered to be "suspicious" circumstances. They decided to investigate and walked to the porch. They were not trespassers, and they observed the jewelry from a place where they had a right to be.
"... It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).
Secondly, assuming arguendo that the police officers were "trespassers", it has long been held that a mere trespass to land does not invalidate an otherwise valid search or seizure. In Hester v. United States, 1924, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898, appellant was convicted of concealing distilled spirits. In affirming appellant's conviction, the court rejected appellant's claim that testimony about moonshine whiskey discovered outside his father's home, but on property owned by his father, should not have been admitted in evidence. The court, speaking through Justice Holmes, stated:
"... It is obvious that even if there had been a trespass, the above testimony was not obtained by an illegal search... . This evidence was not obtained by the entry into the house... . The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon Hester's father's land. As to that, it is enough to say that, apart from the justification, the special protection accorded by the Fourth Amendment to the people in their `persons, houses, papers and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law. 4 Bl.Comm. 223, 225, 226."
This rule was repeated by the Fifth Circuit in Monnette v. United States, 5th Cir.1962, 299 F.2d 847. In affirming appellant's conviction for possession of non-tax paid whiskey, the court stated:
"... It is argued that Agent Hillidge detected the mash odor only after an illegal search and the facts learned through an illegal search cannot justify the issuance of a valid search warrant. Agent Hillidge did go on the property of Monnette before he could definitely identify the mash odor. It is well settled, however, that a trespass upon the grounds surrounding a building does not constitute an illegal search. The protection of the Fourth Amendment does not extend to the grounds. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), Martin v. United States, 155 F.2d 503 (5 C.A. 1946)." (Emphasis added.)
The aforementioned principle was restated by this court in Cobb v. State, Fla.App.2d, 1968, 213 So.2d 492. There we held that a pocketbook found in some high weeds on appellant's property line was admissible in evidence. We said:
"Even assuming that the consent to search given by the appellant was involuntary and therefore invalid and that the officer who searched the grounds and located the pocketbook was a trespasser, the pocketbook and its contents was not the result of an illegal search."
The Fourth Amendment prohibition against unreasonable searches and seizures applies only to "persons, houses, papers, and effects." Neither Sergeant Henseley nor Officer Lewis entered the house or looked through any windows. See Olivera v. State, Fla.App.2d, 1975, 315 So.2d 487. We think that the officers made their observations from the "grounds" around the house and did not violate defendants' Fourth Amendment rights. In fact, Officer Lewis observed the jewelry from the street.
Most of what we have just said, however, may be of historical value only. Because of the problems in determining exactly *846 what constitutes a "house" and its "curtilage", a new test to determine the "reasonableness" of a search has emerged in recent years. It is now clear that:
"... [T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.
* * * * * *
"... [T]he reach of that Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure.
"... [T]he `trespass' doctrine ... can no longer be regarded as controlling." Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
and that:
"... [W]herever an individual may harbor a reasonable `expectation of privacy', ... he is entitled to be free from unreasonable governmental intrusion." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
In the case sub judice two alert police officers observed suspicious activity on the well-lit porch of a residence. These observations were made from the street. The officers then walked to the front porch to investigate and there observed the jewelry which the trial court ordered suppressed. Under these circumstances, we do not feel defendants' "expectation of privacy", if any, was "reasonable." The officers did not violate defendants' Fourth Amendment rights by committing an "unreasonable governmental intrusion." Terry v. Ohio, supra.
The order of suppression is reversed.
HOBSON, Acting C.J., and BOARDMAN, J., concur.