THE STATE OF OHIO, APPELLEE, v. EMMONS, APPELLANT.*

[Cite as State v. Emmons (1978), 57 Ohio App. 2d 173.]

(No. 5635—Decided January 31, 1978.)

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. Thomas A. Hansen,* for appellee.

*Messrs. Harrison & Schwarz,* for appellant.

*Reporter's Note: A motion for leave to appeal was overruled by the Supreme Court of Ohio, June 16, 1978.

174

SHERER, P. J. The defendant, appellant herein, was indicted under two counts of receiving stolen property. A jury found him guilty as charged and he was sentenced to the Reformatory.

After being arraigned, the appellant filed a motion requesting the dismissal of the case on the ground that R. C. 2913.51, under which he was indicted, was void for being vague and that, therefore, it did not state an offense. The pertinent portion of that statute is as follows:

"(A) No person shall receive, retain, or dispose of property of another, knowing or having reasonable cause to believe it has been obtained through commission of a theft offense."

The reason given for this request was that the statute sets forth a culpable mental state, "having reasonable cause to believe," which has not been defined by the legislature as the terms "purposely, knowingly, recklessly and negligently" have been in R. C. 2901.22 and that, since the legislature did not define this phrase, a person could not know what conduct was prohibited thereby. The trial court overruled this motion and it is this ruling which is set forth herein as the appellant's first assignment of error.

Presumably, the appellant is referring to "the common-law requirement that legislation to be valid must be sufficiently definite and certain to permit persons to know their rights and obligations and for the courts to enforce them." 50 Ohio Jurisprudence 2d 333, Statutes, Section 358. But, the fact that the legislature does not define each and every word, term, or phrase which it uses or that it defines one or some terms and not others does not, in and of itself, render such legislatively undefined terms so vague and indefinite as to be unenforceable. If the legislature does define a term, that definition must be followed, but that doctrine has no application here.

The language of the phrase in question is clear, definite, plain, and unambiguous. Under these circumstances, it is to be applied, not questioned or interpreted. Since the meaning of the phrase is certain, the court was correct in

refusing to declare it void for uncertainty. The first assignment of error is overruled.

Just prior to the commencement of the trial, the appellant orally moved for an order prohibiting the appellee from introducing in evidence the certificates of title to the two motorcycles which the appellant was accused of receiving. The appellant averred that he sent a letter to the appellee on September 20, 1977, requesting "all the evidence they intend to present" and that their reply did not "contain any reference to the fact that certificates of title would be introduced in the trial." The appellee replied that the appellant was apprised of the titles at the preliminary hearing. The court overruled the motion on the ground that the appellant was not prejudiced. This order comprises the substance of the second assignment of error.

The pertinent portions of Criminal Rule 16 are as follows:

"(A) Demand for discovery. Upon written request each party shall forthwith provide the discovery herein allowed. Motions for discovery shall certify that demand for discovery has been made and the discovery has not been provided.

"(B) Disclosure of evidence by the prosecuting attorney.

"* * *

"(1) * * *

"(c) * * * Upon motion of the defendant the court shall order the prosecuting attorney to permit, the defendant to inspect and copy or photograph * * * documents * * * available to or within the possession, custody or control of the state * * * intended for use by the prosecuting attorney as evidence at the trial, * * *."

Although the respective letters are not in the record, it is apparent therefrom that the appellee did not formally disclose to the appellant that he intended to use certificates of title at the trial. It is also perfectly apparent from the record that this is simply a formal, technical objection unrelated to any prejudice to the appellant because he knew all about these titles at the time of the preliminary hearing; which was held almost eight months before the trial on the merits, and, armed with

this knowledge, he made no request for permission to inspect and copy the titles and filed no motion requesting an order for such permission. He sat idly by for months hoping that this obviously inadvertent omission on the part of the appellee which had nothing to do with the merits of the case and created no prejudice to his defense would effect his exoneration.

There is some talk in this record as to a duty of the prosecutor to *furnish* a copy of documents, but the rule does not require this. All that it requires is that the prosecutor notify the defendant as to the identity and nature of any documents he intends to use and to honor a request to examine and make copies of same and there is nothing in this record which would indicate that the prosecutor refused to honor such a request which seemingly was never made.

Since the failure of the prosecutor to formally notify the appellant of his intention to use the titles at the trial has not been shown to be willful and was, in all likelihood, an act of simple, harmless negligence and, since the record is utterly devoid of any indication that the appellant was prejudiced thereby, the court's action in overruling the motion to suppress the titles was not error. *State* v. *Mitchel* (1975), 47 Ohio App. 2d 61; Criminal Rule 16(E) (3). The second assignment of error is overruled.

On the day when the motorcycle involved in count two of the indictment was stolen and came into the possession of the appellant, the owner thereof had a certificate of title, ostensibly for that motorcycle, but such had a serial number inscribed thereon which did not match the serial number of his motorcycle. This was due to an inadvertence on the part of the seller and a correct certificate of title showing the actual serial number was thereafter issued to that owner. The appellant objected to the entire testimony of this owner and to the introduction of the corrected title on the basis that it was prohibited by R. C. 4505.04 in that that witness did not have a valid certificate of title to the motorcycle on the day it was stolen and on the next day when it was found in the appellant's

driveway, and that the reissued title was not acceptable to prove ownership on those days, its being only evidence of present ownership which was not in issue. The overruling of these objections forms the gist of the appellant's third assignment of error.

R. C. 4505.04, in pertinent part, provides:

"No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

"(A) By a certificate of title or a manufacturer's or importer's certificate issued in accordance with sections 4505.01 to 4505.19, inclusive, of the Revised Code.

"(B) By admission in the pleadings or stipulation of the parties."

The appellant's reliance on this statute in this type of case is misplaced. The law was enacted to protect the rightful owners of motor vehicles against the fraudulent claims of others, not to protect thieves from rightful owners. All that is necessary in a case such as this one with respect to the element "property of another," which is analogous to a larceny case in this regard, is evidence of a wrongful taking from the *possession* of another because the exact state of the title of the stolen property on the date of the crime is of no concern to the thief except that it must have been in someone else. Particular ownership is not vital as to the thief. 34 Ohio Jurisprudence 2d. 13, 52, Larceny, Sections 9, 65.

The owner testified that he bought that motorcycle new, that it had approximately 800 miles on it when stolen, that it was in his uninterrupted possession until stolen, that it was stolen, and he positively identified the motorcycle found in the appellant's driveway as being that same one.

In this type of case, this evidence was proper and it was sufficient as to the element of "property of another" and the certificate of title was immaterial and unnecessary. Furthermore, the title, as testified to and admitted, satisfied the requirement of the statute since it was a cer-

tificate of title to *that* vehicle issued in accordance with R. C. 4505.01 through 4505.19 inclusive. The third assignment of error is overruled.

The fourth assignment of error raises a search and seizure question of first impression. The appellant filed a motion to suppress as evidence two motorcycles removed from the defendant's premises. At the hearing which the court held on the merits of this motion, the following facts were revealed by the testimony of two Kettering police officers, Detectives Walton and Smith.

Detective Smith was investigating stolen motorcycle cases and, shortly after noon on August 9, 1976, accompanied by Detective Walton, went to 2919 Dunhill in Kettering where the appellant resided to investigate a report by a next-door neighbor that there were stolen motorcycles in the appellant's driveway which the neighbor could see from her side window. When they drove past the house, the detectives saw two motorcycles parked in the driveway beside the house which were partially covered by a single tarpaulin. There was another motorcycle parked in front of the house.

The detectives parked and walked to the door of the house and knocked. A woman who identified herself as Mrs. Emmons answered the door and said her husband, the appellant, was not home. (He actually was.) They advised her that they were looking for some stolen motorcyles reported to be there and she said that there was only one motorcyle there, the one out front, which belonged to her husband. Knowing that there were at least two other motorcycles standing in the driveway under the tarpaulin, Detective Smith stated that he was going to look at them. Whereupon he walked over to the motorcycles, lifted the tarpaulin, and looked at them. He discovered that one of them had been reported as having been stolen. The other was subsequently also reported to have been stolen.

It was stipulated that the appellant had not consented to allow the detective to look at the motorcycles. The detectives did not attempt to obtain a search warrant initially because Detective Smith, having *nine* stolen Z-1 Kaw-

asakis on his stolen motorcyle list, did not know which particular motorcyle he was looking for and, having seen the motorcycles in the appellant's driveway as reported by the neighbor, he did not then try to obtain a warrant because he feared that they might be moved.

The trial court overruled the motion to suppress and, at the trial, admitted photographs of the motorcycles and testimony of the owners as to their identity and as to their having been stolen the night before. This is assigned as error. The basis of the claim of error is that the method of discovery of the motorcycles constituted an unreasonable search and seizure as proscribed by the Ohio Constitution and the United States Constitution. The Fourth Amendment to the United States Constitution states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants, shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 14, Article I of the Ohio Constitution, is, for all practical purposes, identical.

None of the cases cited by the appellant or the appellee are in point factually, having to do with searches of houses or cars belonging to the accused, nor do they reach the legal issue except in a vague, general way with respect to the broad aspects of the law of search and seizure. Neither a house (or any other building) nor a car belonging to the defendant was searched or even examined here.

The broad general rule is that, when property described by the Constitution is searched without a warrant's permission, the search is unreasonable *per se*. This rule may not have any application to this case because it is not altogether certain that there was a search of any of the property so described. It was apparent that the objects were motorcycles and they were not the property of the appellant so that there was no prying into hidden places on any of appellant's property. *State* v. *Davidson,*

(1969), 44 Wisc. 2d 177, 170 N. W. 2d 755. But it will not be necessary to decide that question because the police activity here is supportable on other grounds.

We believe the rationale applied to a search and seizure by the United States Court of Appeals of the 8th Circuit in the case of *United States* v. *Taylor* (C. A. 8, 1970), 428 F. 2d 515, to be sound and to be applicable to this case. In that case, the police received an anonymous tip that some recently stolen new tires were at the defendant's residence. During a surveillance of the house, the police observed new tires being taken from the basement and loaded into a dump truck which was "parked completely off the street close to the rear door of the house." The chief of police entered the property, climbed on the truck, and in comparing the tires with his list of the stolen ones, found that these were some of them. The police had no warrants.

The search and seizure were upheld. The court said the officer had a right to enter the property (page 520) and that the exception of not needing a warrant where it is impractical to obtain one was applicable. They quoted from *Preston* v. *United States* (1964), 376 U. S. 364, 366-7, as follows:

"Common sense dictates, of course, that questions involving search[es] of motorcars *or other things readily moved* cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be [an] unreasonable search of a house may be reasonable in the case of a motorcar." (Emphasis ours.) (Page 517.)

The court went on to state that, nevertheless, the warrantless search must be reasonable and that reasonableness would be found if there was probable cause, which was defined as:

"Probable cause to search exists when the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that the property to be seized will be found in a

particular place or on a particular person." (Pages 517-518.)

The court said that, although this truck was within the curtilage, nevertheless the same exception applied thereto because of the threat of movability. (Page 518.) Then, the court recited the facts which indicated that the officer had probable cause and, consequently, that the search was reasonable. This recitation can be paraphrased by inserting the facts of this case as follows: .

We think Officer Smith, under the objective facts of this case, had probable cause to examine the motorcycles. He knew of the theft of some motorcycles and had received a tip that two of them were in the appellant's driveway. (The only factor missing here from those in *Taylor* is knowledge of the appellant's activities.) Smith had a list of the stolen motorcycles. When Smith verified the information that motorcycles were in the appellant's driveway by seeing them there and when the appellant's wife acted suspiciously and evasively by denying that there were any other motorcycles on the property except the one out front which she claimed was her husband's, the suspicion engendered by the tips had then, by any objective standard, ripened into a probable cause to believe that the motorcycles seen from the street were probably some of the stolen ones. Smith, at that time, however, did not know positively that they were stolen and, thus, could not describe them sufficiently so as to get a warrant. Furthermore, he knew that, as soon as he left for a warrant, they would be moved; thus, an immediate verification was necessary if that which was reasonably thought to be the stolen property and to constitute evidence of the commission of a crime was to be seized and secured before being transported and dispensed to areas beyond the reach of the officers. The lifting of the tarpaulin was based on probable cause, and the exigencies of the situation demanded that the officer act to prevent the destruction of evidence of the crime. Therefore, the evidence obtained by this warrantless examination of the motorcycles was properly admitted. *United States* v. *Taylor, supra,* at 518.

Another case which is analogous to this one and which, factually, is almost on all fours is *State* v. *Crea* (1975), 305 Minn. 342, 233 N. W. 2d 736. In that case, the police, at night, traced a stolen snowmobile trailer by a citizen's report of the license number of the car towing it to the defendant's house. Snowmobiles and trailers had been stolen. The police went to the defendant's house without a warrant and walked on the driveway to the rear where they found a trailer which an examination revealed to be stolen. Tracks led from it to a walk-in basement door. They shined flashlights in the basement window and saw a snowmobile maching a reported stolen one. The officers looked into the garage through a hole and saw another snowmobile. The defendant led them into the house and the snowmobiles and trailers were identified as stolen property.

The court said that, although the Fourth Amendment's protection extended to the curtilage, the police could enter the areas thereof "which are impliedly open to use by the public" without a warrant "if they are conducting an investigation and want to question the owner" and, while there, were free to observe. They went on to say:

"Because of this, we have no difficulty in sustaining the initial intrusion of the police, specifically, their walking onto the driveway and their examination of the trailers which were in plain sight. The police had a right to walk onto the driveway because it was an area of the curtilage impliedly open to use by the public. They would have had to walk on it in order to get to the house so that they could knock on the door to talk with defendant. Thus, they had a right to be in the place from which they viewed the first trailer. Having viewed the trailer in plain sight, they had a right to examine it to determine whether it was the stolen trailer." (Page 346, 233 N. W. 2d at 739.)

The court then sustained the part of the search where the police looked into the basement window and the garage saying:

"The test is not whether it would have been reason-

able for the police to obtain a warrant but whether the police acted reasonably in proceeding without one.'' (Page 346, 233 N. W. 2d at 740.)

This is analogous to our case where the officer lifted the tarpaulin to identify the motorcycles. He had very strong probable cause to do so based upon what he already knew and had seen and heard. The intrusion was minimal, and if he went for a warrant, the bird would have flown.

The rationale in these cases is that there is a *vast* difference between entering someone's house or outbuildings on a mere suspicion without a warrant to search for stolen property and in examining movable personal property fitting the description of the stolen property which is located in plain sight on the driveway outside the house, when the police have a right to be there and which property they have a reasonable and probable cause to believe has been stolen, in order to verify this belief. Such a procedure is not *per se* unreasonable because of the absence of a warrant, *Cady* v. *Dombrowski* (1973), 413 U. S. 433, 442, 447, 448, and the procedure followed here was not unreasonable within the meaning of the Fourth Amendment because it was not offensively intrusive and was confined to the sole purpose of checking to see if the vehicles were the stolen ones, which was a legitimate police function. *Cady* v. *Dombrowski, supra*. If the police could not do this as a part of an investigation, they would not be able to discharge the chief function of government, which is the protection of inoffensive citizens from the depradators.

Two other cases which are directly in point are *State* v. *Davidson, supra,* and *State* v. *Belcher* (Fla. App. 1975), 317 So. 2d 842. There are no Ohio cases in point. The cases with respect to searches of areas outside of residences are collected in 68 American Jurisprudence 2d 676, Searches and Seizures, Section 20. Generally, the cases extend the Fourth Amendment protection to the immediate vicinity of the house and to nearby outbuildings, and most of the cases involve outbuildings. But, when squarely presented with a situation such as here where the facts within the knowledge of the officers led them to reasonably conclude

that an offense had been committed by the resident, the warrantless intrusion into the curtilage and the seizure of incriminating evidence found therein as a result of an unobtrusive investigation has been upheld.

Whether or not the officers would have had sufficient probable cause upon which to obtain a search warrant before they went to the appellant's house to investigate is of no significance. As a matter of fact, until they were able to identify the stolen motorcycle they probably would not have been able to initially get a warrant because they could not have specified the property they intended to seize. However, in this regard, the situation is analogous to that in *Carroll* v. *United States* (1924), 267 U. S. 132, the granddaddy of the line of cases which have established the exigent circumstances exception to the *per se* warrant requirement in the case of readily movable personal property. Likewise, see *Brinegar* v. *United States* (1949), 338 U. S. 160. In none of these cases would the search and seizure have been upheld if the argument that the subsequent search would have had to have been supported by probable cause based upon facts known to the officers before they observed the vehicles was valid. In *Carroll* what would they have told the magistrate before they went out to patrol the highway as to precisely whom, what car, and the exact nature of the contraband alcohol they were after? Briefly, no warrant would have initially been obtainable in those cases; yet, the seizure was upheld because the probable cause developed and the investigation continued and, after it had ripened into maturity, it was then impractical to seek a warrant under the circumstances then existent.

Because all the cases analogous to this case have held such unobstrusive investigations as this one, entered into with probable cause, to be reasonable, and because this court does not intend to extend the artificial doctrine of exclusion of otherwise satisfactory evidence of guilt beyond the limits already set by the Supreme Court of the United States, we hold that the impracticability of obtaining a warrant because of the movability of the motorcycles

and the presence in plain sight of two partially concealed motorcycles in an area where the officers had a right to be were sufficient to remove the presumption that a search would be unreasonable without a warrant and that the combination of the information that stolen motorcycles would be found at that location, the presence of the two partially concealed ones, the evasive and suspicious actions of the wife, and the certainty that the vehicles would be immediately removed therefrom if they left furnished the probable cause for a discreet investigation as to the identity of the vehicles which rendered the act of lifting the tarpaulin in order to do so to be reasonable under the circumstances. Thus, since the United States Constitution only prohibits unreasonable searches and seizures, this assignment of error is not well taken and will be overruled.

*Judgment affirmed.*

McBRIDE and WILEY, JJ., concur.