This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Gregory Ray, appellant, appeals from the decision of the Summit County Court of Common Pleas. We affirm.
{¶ 2} As pertinent to this case, on April 15, 2002, a police officer took an incident report regarding a van. Thereafter, the officer provided information over the police radio, conveying that the van had been reported stolen. Later in the evening, the officer observed a vehicle matching the description of the van. In the events that followed, the driver of the van would not stop the vehicle and several officers began to pursue the vehicle. Eventually, the van was driven onto a sidewalk, around a tree, and collided with a police cruiser. When police approached the van, the driver's seat was empty but the passenger provided police with assistance. Thereafter, police found two envelopes containing Mr. Ray's name in the van and found Mr. Ray sitting on a nearby porch.
{¶ 3} On April 24, 2002, Mr. Ray was indicted for felonious assault, in violation of R.C. 2903.11(A)(2), receiving stolen property, in violation of R.C. 2913.51(A), failure to comply with order or signal of police officer, in violation of R.C. 2921.33.1(B), and vandalism, in violation of R.C. 2909.05(B)(2). Mr. Ray pled not guilty to the charges and the case proceeded to a jury trial. The jury found Mr. Ray guilty of each charge, except for the charge of felonious assault. Thereafter, on July 24, 2002, the trial court entered judgment and sentenced Mr. Ray. This appeal followed.
{¶ 4} Mr. Ray raises six assignments of error. We will address Mr. Ray's third and fourth assignments of error together.
 First Assignment of Error "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS FOR THE STATE'S FAILURE TO TRY DEFENDANT IN ACCORDANCE WITH STATUTORY AND CONSTITUTIONAL SPEEDY TRIAL LIMITS."
{¶ 5} In his first assignment of error, Mr. Ray asserts that the trial court erred in denying his motion to dismiss because he was not brought to trial in the time limit required by R.C. 2945.71. Specifically, he asserts that it was error to begin his trial on July 15, 2002 because this date fell ninety-one days after his arrest. We disagree.
{¶ 6} R.C. 2945.71(C)(2) provides, in pertinent part, that "[a] person against whom a charge of felony is pending *** [s]hall be brought to trial within two hundred seventy days after the person's arrest." Further, for purposes of computing time under this statutory section, R.C. 2945.71(E) provides that "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."
{¶ 7} Crim.R. 45(A) provides, in pertinent part:
 "In computing any period of time prescribed or allowed by these rules, by the local rules of any court, by order of court, or by any applicable statute, the date of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is not Saturday, Sunday, or legal holiday."
{¶ 8} In the present case, Mr. Ray was incarcerated while awaiting trial. Accordingly, when he was arrested on April 15, 2002, the state had to bring him to trial within ninety days. See R.C. 2945.71(C)(2); see, also, R.C. 2945.71(E). Given that the day of arrest does not count against the state, the ninetieth day was July 14, 2002. See State v.Pierson, 149 Ohio App.3d 318, 2002-Ohio-4515, ¶ 14. However, July 14, 2002 fell on a Sunday. "When the last day for speedy trial is a Sunday, Crim.R. 45 extends the time period until the end of the following day." Id. at ¶ 15; see, also, State v. McCornell (1993),91 Ohio App.3d 141, 145. Accordingly, Mr. Ray's speedy trial date was extended to Monday, July 15, 2002. As Mr. Ray was brought to trial on July 15, 2002, his first assignment of error is overruled.
 Second Assignment of Error "APPELLANT WAS DENIED THE RIGHT TO CONFRONT HIS ACCUSER UNDER THE UNITED STATES CONSTITUTION."
{¶ 9} In his second assignment of error, Mr. Ray asserts that his conviction for receiving stolen property was invalid because he was not given the right to confront either the owner of the vehicle or the individual who reported the theft to the police. Specifically, regarding this argument, Mr. Ray asserts that, as neither the owner of the vehicle nor the individual who reported that the vehicle was stolen testified, there was no evidence of ownership except for hearsay testimony. Accordingly, he asserts that it was not established that the vehicle was stolen or obtained through theft. We disagree with his assertions.
{¶ 10} Mr. Ray was found guilty of receiving stolen property, in violation of R.C. 2913.51(A) which provides: "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." With regard to this statutory section, "[t]he inquiry is reduced to two questions: whether Defendant received, retained, or disposed of the property of another, and whether Defendant knew or had reasonable cause to believe that the property was obtained by theft." State v. Ortiz (Oct. 25, 2000), 9th Dist. No. 3040-M.
{¶ 11} In State v. Emmons (1978), 57 Ohio App.2d 173, 177, the Court considered a case involving the charge of receiving stolen property and held:
 "All that is necessary in a case such as this one with respect to the element `property of another,' which is analogous to a larceny case in this regard, is evidence of a wrongful taking from the possession of another because the exact state of the title of the stolen property on the date of the crime is of no concern to the thief except that it must have been in someone else. Particular ownership is not vital as to the thief."
{¶ 12} Similarly, in In re Little (Feb. 25, 1998), 9th Dist. No. 18667, this Court addressed a case in which the appellant had been convicted of receiving stolen property and found that the state was not required to offer testimony from the owner of a bicycle to prove that the bicycle had been stolen. In this opinion, we noted that "`[t]he nature of the property received, retained or disposed of; i.e., that it was stolen property, must be proven by the state. The theft offense which gave rise to the property's nature as stolen property need not be proven.'" Id., quoting State v. Lyons (Mar. 6, 1985), 9th Dist. No. 11779. Consequently, we held that, "[i]n proving the nature of the property, the state is not required to offer the testimony of the actual owner of the property." Little; see, also, In re Houston (Nov. 25, 1998), 8th Dist. No. 73950.
{¶ 13} In the present case, Officer Steven Hankins testified without objection that he took an incident report regarding a stolen 1981 Ford Econoline van which was brown over gold with Georgia license plates. Thereafter, the officer reported the stolen vehicle, notifying other officers through a computer system. Later that night, the officer observed someone driving a van matching that description. The driver refused to stop, drove over the speed limit, made erratic turns, swerved from side to side, and did not stop at a stop sign. Other police officers also assisted with the pursuit of the van. As the pursuit continued, the driver of the van crashed into a police cruiser and fled on foot from the scene of the accident. A rational trier of fact had sufficient evidence to conclude that the van was stolen and obtained through theft. SeeLittle; see, also, Houston. Mr. Ray's second assignment of error is overruled.
 Third Assignment of Error "THE EVIDENCE ADDUCED AT TRIAL WAS LEGALLY INSUFFICIENT TO SUPPORT THE VERDICT AND APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 Fourth Assignment of Error "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL."
{¶ 14} In his third and fourth assignments of error, Mr. Ray challenges the adequacy of the evidence presented at trial. Specifically, Mr. Ray avers that the state failed to present sufficient evidence to support the trial court's denial of his Crim.R. 29 motion for acquittal and that his convictions for receiving stolen property, failure to comply with order or signal of police officer, and vandalism were against the manifest weight of the evidence. Mr. Ray's third and fourth assignments of error lack merit.
 Manifest Weight
{¶ 15}When determining whether a conviction was against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
{¶ 16} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
{¶ 17} As explained in the second assignment of error, Mr. Ray was found guilty of receiving stolen property, in violation of R.C. 2913.51(A) which provides: "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." As it pertains to his receiving stolen property conviction, Mr. Ray again raises the same argument made in the first assignment of error. Specifically, he asserts that, since the owner of the van did not testify, there was no evidence that the van was stolen or obtained through theft.
{¶ 18} Mr. Ray was also found guilty of failure to comply with order or signal of police officer, in violation of R.C. 2921.33.1(B) which provides "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Regarding this statutory section, Mr. Ray only challenges that there was no evidence that he was the person operating the van.
{¶ 19} Finally, Mr. Ray was found guilty of vandalism, in violation of R.C. 2909.05(B)(2) which provides, in pertinent part,: "[n]o person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity." "Serious physical harm" is "physical harm to property that results in loss to the value of the property of five hundred dollars or more." R.C. 2909.05(F)(2).
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
Regarding this statutory section, Mr. Ray challenges only that it was not established that he knowingly caused the van's collision with a police cruiser.
{¶ 20} At the hearing, Officer Hankins of the Akron Police Department testified that, on April 15, 2002 at approximately 8:00 or 9:00 p.m., he took an incident report regarding a stolen vehicle. The description given of the stolen vehicle was that it was a 1981 Ford Econoline van which was brown over gold with Georgia license plates. The officer indicated the name of the person whom he took the report from and indicated that the individual's address had unknown numbers but was in Dallas, Texas, explaining that he personally could not recall the exact numbers the individual provided. The officer also indicated the name of the owner of the van, stating that the reporting individual again had provided an unknown address for the owner in Conyers, Georgia. Officer Hankins testified that the reporting individual provided a VIN number but that one of the numbers was wrong so he could not run it through the computer system at that time.
{¶ 21} Officer Hankins testified that he reported the stolen vehicle, letting other officers know of the offense through a computer system located in the police cruiser. Thereafter, Officer Hankins was patrolling at approximately midnight when he observed a van being driven along Maple Street in Summit County. The van matched the description of the stolen vehicle. Officer Hankins began to follow the vehicle, observing it drive over the speed limit, make erratic turns, swerve from side to side and not stop at a stop sign. At some point, the officer turned on the cruiser lights and later turned on the siren. When the van refused to stop, Officer Hankins called for assistance. At trial, he noted that the van's passenger window was tinted so that he could not see through it but that he was able to observe the driver. He explained that he had his spotlight turned on so that he could see the driver through the reflection in the rear-view mirror on the van. During the chase, he was from one to one and a half car lengths behind the van and sometimes even closer when the van slowed down to make a turn.
{¶ 22} Officer Hankins stated that he began to follow the van southbound on a street called Woodward. He observed other police cruisers down the street. Next, he observed the van being driven onto the sidewalk, around a tree and head-on into another police cruiser. The officer stated that the police cruisers had been driven into the grass first, in what looked like an attempt to avoid the van. Officer Hankins testified that he was not in a position to see anyone get out of the van but that, when he approached the van, he observed a woman in the passenger seat. He stated that, after Mr. Ray was apprehended within a short period of time, envelopes were located in the van which had Mr. Ray's name on them. At that time, Officer Hankins identified Mr. Ray as the man driving the van.
{¶ 23} Officer Robert Richardson of the Akron Police Department testified that he heard about the pursuit of the van over the police radio. He explained that he was the lead cruiser driving Northbound on Woodward and did not realize that the van was coming in that direction at a high rate of speed. When he did see the van approaching, there was nowhere for either the van or the cruiser to go so he drove the cruiser onto someone's front yard. Clarifying, he explained that, at first, he just pulled onto the curb but, when he noticed that the van was coming straight toward the cruiser, he went into the yard. As he drove the lead cruiser, he was not struck by the van. Officer Richardson stated that, at one point, he could clearly see the face of the driver and that, after another officer was told about a suspicious man on a porch and an apprehension was made, he identified Mr. Ray as the driver of the van.
{¶ 24} Officer James Joseph Soroky of the Akron Police Department testified that he was following Officer Richardson in another cruiser. As the van was being driven toward the officers, Officer Soroky drove his cruiser onto a driveway to give the van the entire width of the street. He testified that the van was driven onto the lawn area and headed directly toward his vehicle. The officer put his feet on the breaks of his vehicle and prepared himself to get hit head-on. After the impact, he was able to climb out of the vehicle and approach the van. The driver was gone but a woman passenger provided him with a description of the driver. Officer Soroky testified that, in his search of the driver, he noticed Mr. Ray within a short distance of the accident and asked him if he had seen anything. Mr. Ray told him that a young child had just run past.
{¶ 25} Officer David Hammond of the Akron Police Department testified that he approached the scene of the accident after the collision and tried to find the driver. Soon after the accident, he approached Mr. Ray sitting on a nearby front porch. Mr. Ray was not wearing a shirt and was very sweaty. After Mr. Ray was handcuffed, the officer noticed that his heart was beating very fast, as it would after a person runs. o
{¶ 26} As it relates to the charge of receiving stolen property, Mr. Ray's assertion has been addressed in the second assignment of error. It is the "`nature of the property received, retained or disposed of; i.e., that it was stolen property'" that must be proven by the state and not the theft offense which gave rise to the property's nature as stolen property. Little, quoting Lyons. The state was not required to offer the testimony of the actual owner of the property "[i]n proving the nature of the property." Little; see, also, In re Houston.
{¶ 27} Furthermore, regarding the charge of failure to comply with order or signal of police officer, there was evidence from which the jury could determine that it was Mr. Ray driving the van. Specifically, he was identified by two police officers, two envelopes were located in the van with his name on them, and he was found near the scene of the collision, sweaty and with a rapid heartbeat. Additionally, with regard to the vandalism charge, there was evidence introduced from which the jury could find that he knowingly caused the van's collision with a police cruiser. Mr. Ray refused to stop the vehicle, leading the police on a chase for an extended period of time. Thereafter, he drove toward police cruisers at a high rate of speed and, after police had already driven their vehicles toward the side to avoid contact with the van, drove the van onto the lawn and hit a police cruiser head-on.
{¶ 28} After a careful review of the record, we find no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Mr. Ray of receiving stolen property, failure to comply with order or signal of police officer, and vandalism; therefore, we conclude that Mr. Ray's convictions on these counts were not against the manifest weight of the evidence.
 Sufficiency
{¶ 29} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal *** if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
{¶ 30} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Having found that Mr. Ray's convictions were supported by the manifest weight of the evidence, we find that there was sufficient evidence that Mr. Ray did commit the charges of receiving stolen property, failure to comply with order or signal of police officer, and vandalism. Accordingly, Mr. Ray's third and fourth assignments of error are overruled.
 Fifth Assignment of Error
"APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."
{¶ 31} In his fifth assignment of error, Mr. Ray asserts that his convictions must be reversed due to ineffective assistance of counsel. We disagree.
{¶ 32} A criminal defendant is guaranteed a right to the effective assistance of counsel by the Sixth Amendment. See McMann v. Richardson
(1970), 397 U.S. 759, 771, 25 L.Ed.2d 763. A two-step process is employed in determining whether the right to effective counsel has been violated.
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674.
{¶ 33} In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98, 100. An attorney properly licensed in Ohio is presumed competent. State v. Lott
(1990), 51 Ohio St.3d 160, 174. Additionally, debatable trial tactics do not give rise to a claim for ineffective assistance of counsel. In ReSimon (June 13, 2001), 9th Dist. No. 00CA0072, citing State v. Clayton
(1980), 62 Ohio St.2d 45, 49.
{¶ 34} Mr. Ray asserts that his trial counsel was ineffective because counsel did not renew his objection to the alleged hearsay testimony of Officer Hankins. Additionally, he asserts that trial counsel did not attempt to prevent the jury from seeing prejudicial information; specifically, a medical report and a parole report that indicated that Mr. Ray had a prior criminal record. Finally, Mr. Ray makes several general assertions which he neither elaborates upon nor explains. Further, regarding these general assertions, Mr. Ray has neither asserted nor demonstrated how he was prejudiced by his counsel's allegedly deficient performance. Consequently, this Court will not address his general assertions.
{¶ 35} With regard to Mr. Ray's argument pertaining to the alleged hearsay statement, he does not point to or explain which portion of Officer Hankins' testimony constitutes hearsay. This Court notes that trial counsel did object but was subsequently overruled when Officer Hankins testified as to the vehicle owner's name. If we assume that this is the testimony to which Mr. Ray is referring, we find no error on the part of counsel. Counsel did object when the officer's statement was made and, thereafter, the officer did not repeat the owner's name. Further, we find no prejudice to Mr. Ray from Officer Hankins' testimony. Excluding this testimony from consideration, there is no reasonable probability that the outcome of trial would have been different.
{¶ 36} With regard to the supposedly erroneous admission of a medical report and a parole report, this Court finds that Mr. Ray has not specified where in the record a parole report was admitted into evidence. A parole report is not listed as a trial court exhibit nor is the report before this Court as part of the trial court record. Consequently, we cannot say that its supposed admission was error.
{¶ 37} Regarding the medical report, Mr. Ray's trial counsel discussed the introduction of this evidence in proceedings held between the attorneys and the judge in the judge's chambers. Trial counsel had been discussing various requests made by Mr. Ray regarding the introduction of evidence and noted that Mr. Ray had specifically requested a copy of his medical report, introducing it as Defendant's Exhibit B. The medical report, entitled "Summit County Jail Initial Health Screening," consists of several pages pertaining to medical evaluations and treatment. At the top of the first page is an information section listing Mr. Ray's name, date of birth, race, criminal charge and other personal information. As pertinent to Mr. Ray's allegation of ineffective assistance of counsel, next to the line that states "Prior Incarceration?" there is a "Y" to indicate that he has been incarcerated previously.
{¶ 38} This Court notes that, apart from above-mentioned section, there is no other information in the exhibit pertaining to Mr. Ray's criminal record. Rather, the form merely indicates that Mr. Ray had previously been in the Summit County Jail at some other time. Further, even if it was error to allow the jury to see Mr. Ray's medical report, this Court cannot say that, were it not for this error, there is a reasonable probability that the result of the trial would have been different. Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 39} Mr. Ray's assigned errors are without merit. The fifth assignment of error is overruled.
 Sixth Assignment of Error "THE TRIAL COURT ERRED WHEN SENTENCING APPELLANT TO CONSECUTIVE SENTENCES AND TO THE MAXIMUM SENTENCES."
{¶ 40} In the sixth assignment of error, Mr. Ray asserts that the trial court erred when it imposed maximum and consecutive sentences for his convictions. We disagree.
 Maximum Sentence
{¶ 41} R.C. 2929.14(B) provides that a trial court may impose more than the minimum prison term authorized for a felony offense where "the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." Furthermore, R.C.2929.14(C) provides that the trial court must find an offender falls under one of the following four categories before it may impose a maximum sentence: offenders who commit the worst forms of the offense, offenders who pose the greatest likelihood of committing future crimes, certain major drug offenders under R.C. 2929.14(D)(3), or certain repeat violent offenders in accordance with R.C. 2929.14(D)(2). "We do not require the court to utter any `magic' or `talismanic' words, but it must be clear from the record that the court made the required findings." State v.White (1999), 135 Ohio App.3d 481, 486.
{¶ 42} In the present case, when the trial court sentenced appellant, it considered R.C. 2929.14(C). Specifically, the trial court stated the following at the sentencing hearing:
 "I will note that the offender in this case has previously served a prison term, that this offense was committed while the offender was under a community control sanction, that is, on parole. I will note for the record the defendant does have a long criminal history as noted earlier. He was on parole at the time of this offense.
 "The record would indicate he has not responded favorably and has not been rehabilitated to a satisfactory degree after sanctions have been imposed for various offenses.
 "Mr. Ray these are serious offenses, and I am not going to diminish how serious they are. Court will do the following.
 "As to the F 4, receiving stolen property, the court will impose a term of 18 months in the Ohio Department of Corrections. As to the failure to comply with the order or signal of a police officer, which is a felony of the third degree, court will impose a term of five years.
 "As to the offense of vandalism, the F 5, the court will impose a term of 12 months. The court will indicate for the record that a maximum term in this case is necessary because the offender poses the greatest likelihood of committing future crimes, circumstances of this offense, a police chase placing both the life of the officers, as well as those in the community, at risk, indicate that a maximum term is call for."
 In addressing the imposition of maximum prison terms, the journal entry lists the trial court's findings as:
"(1) Served prior prison term;
 "(2) Long history of criminal convictions or delinquency adjudications;
"(3) Offender committed the worst form of the offense(s);
 "(4) A minimum sentence would demean the seriousness of the offense and would not adequately protect the public."
{¶ 44} In the present case, the trial court was presented with evidence that would allow it to conclude that, pursuant to R.C. 2929.14(C), Mr. Ray posed the greatest likelihood of committing future crimes and, also, had committed the worst form of the offenses. Further, the trial court also stated the reasons why it believed that Mr. Ray should receive the maximum sentences. After a careful review of the record, this Court cannot find that the trial court erred in imposing maximum sentences for Mr. Ray's convictions.
 Consecutive Sentence
{¶ 44} R.C. 2929.14(E) states in pertinent part:
 "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
{¶ 45} A sentencing court must make findings and give its reasons to support the imposition of consecutive sentences. State v. Riggs (Oct. 11, 2000), 9th Dist. No. 19846. "In Riggs this Court concluded that [State v. Edmonson (1999), 86 Ohio St.3d 324] requires a court to use some language that is close, if not identical, to the statutory criteria when articulating its findings." State v. Alfono, 9th Dist. No. 02CA0063-M, 2003-Ohio-237, ¶ 36. If a trial court fails to make the required findings, the appellate court "shall remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings." R.C. 2953.08(G)(1).
{¶ 46} In the present case, at the sentencing hearing, the trial court gave reasons to impose consecutive sentences. Specifically, the trial court stated:
"[T]he court will run these terms consecutive and not concurrent. I believe they are necessary to protect the public, punish the offender. The offender's criminal history show[s] that consecutive terms are needed to protect the public.
"The reasons for that, as I have stated earlier with regard to the maximum sentence in this particular case, high speed chase, defendant is on parole, risk to these officers and the community at large, indicates that consecutive terms are necessary in this particular case. I will also indicate these terms are to be run consecutive with any sanction imposed by the parole authority in this particular case."
{¶ 47} Furthermore, the judgment entry contains the findings that consecutive sentences were necessary to protect the public and punish Mr. Ray, that consecutive sentences were not disproportionate to Mr. Ray's conduct and the danger he poses, and the crimes were committed while Mr. Ray was awaiting trial or sentencing, while he was under sanction, or while he was under post-release control.
{¶ 48} The trial court gave reasons at Mr. Ray's sentencing hearing and, also, properly journalized its findings in the judgment entry. Given both the statements made on the record at the sentencing hearing and the findings in the judgment entry, this Court affirms the consecutive sentences.
{¶ 49} The sixth assignment of error is overruled.
{¶ 50} Mr. Ray's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
BAIRD, P.J., CONCURS.