## STATE v. RONALD THOMAS CREA.

233 N. W. 2d 736.

September 12, 1975—No. 44815.

*Wilton E. Gervais,* for appellant.

*Warren Spannaus,* Attorney General, *Robert W. Johnson,* County Attorney, and *Edward W. Bearse,* Assistant County Attorney, for respondent.

PER CURIAM.

Defendant was found guilty by the Anoka County District Court, sitting without a jury, of a charge of concealing stolen property, Minn. St. 609.53, and sentenced to a fine of $1,000 and a term of imprisonment, with execution of the prison sentence stayed. Upon this appeal from judgment of conviction, defendant contends that his conviction was based on evidence seized in violation of his Fourth Amendment rights, evidence which defendant sought to suppress at a Rasmussen hearing. We affirm.

At 4:20 a. m. on December 15, 1971, the dispatcher for the Anoka County sheriff's office received a telephone call from Mrs. Myron Malenke of Blaine, reporting the theft moments before of two Polaris snowmobiles, 1971 and 1972 models, along with a snowmobile trailer. At 4:30 a. m. the dispatcher received another call from a neighbor of Mrs. Malenke, Richard G. Steuck, who reported that on his way to work he had seen a 1969 or 1970 Buick with license number 4GR 449 pulling a trailer containing two snowmobiles, and that he thought the trailer and snowmobiles might have been stolen from a neighbor.

At about 5:25 a. m. Officers Fischer and Hedlund of the Blaine Police Department observed a car leaving a home at 6800 Hodgson Road which fit the description of the car Steuck had seen. The officers stopped the car and arrested the driver, Dennis McGaughey, who is defendant's half brother. After being given a Miranda warning, McGaughey refused to speak to the officers. Other officers soon arrived, some to take custody of McGaughey, others to assist in checking the grounds at 6800 Hodgson Road and talk to whoever was at the house.

Using their flashlights, the officers walked down the driveway toward the house. They observed two snowmobile trailers,

one on the left in front of an unattached garage, another on the right behind the house. The second trailer matched a description police had secured of the trailer stolen from the Malenkes. The officers approached this trailer and observed in the snow snowmobile tracks going from the trailer to a walk-in basement door. Shining their flashlights through a window in the walk-in basement door, the officers saw three snowmobiles in the basement, one of which was a Polaris that matched the description of one of the two stolen from the Malenkes. Apparently simultaneously, other officers peered into the garage through a hole in a cloth covering a window and through a gap in the door. They saw another snowmobile, also a Polaris, in the garage.

About the time that the officers were peering through the window into the basement, defendant appeared and asked them what they were doing. One officer stated that they wanted to talk to him and defendant invited them into the house. There was testimony that once the officers were inside the house one stated that they were investigating snowmobile thefts; that they had seen trailers outside and snowmobiles in the basement; and that they would like to check out the ones in the basement. The officers testified that defendant gave them permission to do so. Defendant, however, testified that they went to the basement without asking for, and without his giving, permission. The Rasmussen hearing judge believed the officers and found that defendant had given permission to the officers to search the basement.

Once in the basement the officers observed three snowmobiles, one being a Polaris which they identified as one of the two taken from the Malenkes. The officers found the serial number of the snowmobile in a garbage can in the basement. Defendant told the officers that he owned one of the three snowmobiles, that a friend owned one, but that he had never seen the Polaris before. Defendant also denied knowledge of the trailer outside the basement. The officers then placed defendant under arrest and advised him of his rights. On the way to the police car defendant informed the officers that if they wanted to get into the detached

garage they could use a key which they would find in the house.

Malenke, called to defendant's house, identified the trailer and the two Polaris snowmobiles as his. The officers determined that the other trailer and two of the other snowmobiles had been taken the previous morning from another party.

At 1:30 p. m. that afternoon defendant told an officer interrogating him that he had known the snowmobiles were stolen, but was just storing them for friends. Defendant testified at trial that Dennis McGaughey had brought the snowmobiles to his house and that defendant knew they were stolen.

In seeking a reversal of his conviction, defendant contends that the police violated his Fourth Amendment rights in discovering the presence of the trailers and snowmobiles on his property, and that he did not voluntarily consent to the search of his basement.

1. Although the Fourth Amendment refers only to "persons, houses, papers and effects," courts generally have held that it applies also to the "curtilage," which is the area adjacent to a house and includes the garage.[1] Polk v. United States, 291 F. 2d 230 (9 Cir. 1961), affirmed after remand, 314 F. 2d 837 (1963), certiorari denied, 375 U. S. 844, 84 S. Ct. 96, 11 L. ed. 2d 72 (1963); Care v. United States, 231 F. 2d 22, 25 (10 Cir. 1956), certiorari denied, 351 U. S. 932, 76 S. Ct. 788, 100 L. ed. 1461 (1956).

---

[1] In Katz v. United States, 389 U. S. 347, 351, 88 S. Ct. 507, 511, 19 L. ed. 2d 576, 582 (1967), the United States Supreme Court rejected the concept of "a constitutionally protected area" as the only test of Fourth Amendment coverage. Katz says that the Fourth Amendment protects people, not places, and that a test of the Fourth Amendment's scope is whether the government has violated the privacy on which an individual has justifiably relied, but Katz also says that Fourth Amendment protection often goes further than the privacy of persons and often has nothing to do with privacy. In other words, Katz does not completely reject the concept of "constitutionally protected areas," and the concept still has vitality although it does not serve as a talismanic solution to all Fourth Amendment questions. Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn. L. Rev. 349, 357.

But this does not mean that absent special circumstances police may never go on the curtilage without a warrant. Courts have held that police with legitimate business may enter the areas of the curtilage which are impliedly open to use by the public. Thus, police may walk on the sidewalk and onto the porch of a house and knock on the door if they are conducting an investigation and want to question the owner, and in such a situation the police are free to keep their eyes open and use their other senses. Ellison v. United States, 93 App. D. C. 1, 3, 206 F. 2d 476, 478 (1953), relied upon in State v. Buchwald, 293 Minn. 74, 80, 196 N. W. 2d 445, 449 (1972).

Because of this, we have no difficulty in sustaining the initial intrusion of the police, specifically, their walking onto the driveway and their examination of the trailers which were in plain sight. The police had a right to walk onto the driveway because it was an area of the curtilage impliedly open to use by the public. They would have had to walk on it in order to get to the house so that they could knock on the door to talk with defendant. Thus, they had a right to be in the place from which they viewed the first trailer.[2] Having viewed the trailer in plain sight, they had a right to examine it to determine whether it was the stolen trailer. The same may be said with respect to the second trailer, which they also saw in plain sight.

The difficult question, in our view, is whether the police violated the Fourth Amendment in looking into the walk-in basement window without a warrant. We hold that under the circumstances they were justified in doing so. The test is not whether it would have been reasonable for the police to obtain a warrant but whether the police acted reasonably in proceeding without one. Cooper v. California, 386 U. S. 58, 62, 87 S. Ct. 788, 791, 17 L. ed. 2d 730, 734 (1967). We believe they acted reasonably in looking in the window. First, they had very strong probable cause to believe that if they shined the flashlight into the

---

[2] Had it been daylight, there is no doubt that they would have been able to see the first trailer from the road.

window, they would see the stolen snowmobiles for which they were looking. Second, their intrusion, being visual and involving a basement window only, was minimal. Third, they might have had difficulty obtaining a search warrant at that hour. For these reasons we hold that the police acted reasonably in looking into the basement window.

2. Defendant's second contention is that he did not voluntarily consent to the search of the house and garage and that any consent he gave was tainted by the illegal actions of the police in discovering the snowmobiles.

The United States Supreme Court's decision in Schneckloth v. Bustamonte, 412 U. S. 218, 93 S. Ct. 2041, 36 L. ed. 2d 854 (1973), and this court's decision in State v. Armstrong, 292 Minn. 471, 194 N. W. 2d 293 (1972), justify the trial court's finding that defendant voluntarily consented to the search of his basement and garage. Since there was no illegal behavior by the police, we do not reach the claim that the consent was tainted.

Affirmed.