*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1000**

State of Minnesota,
Respondent,

vs.

Tavaires Higgins,
Appellant.

**Filed September 8, 2015**
**Affirmed**
**Reyes, Judge**

Hennepin County District Court
File No. 27CR1316008

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Larkin, Judge; and Rodenburg, Judge.

## U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

On appeal from his conviction of possession of a firearm by a prohibited person, appellant argues that (1) his conviction must be reversed because the warrantless search

of his garbage was unconstitutional and (2) the district court erred by imposing a mandatory 60-month sentence. We affirm.

**FACTS**

In May 2011, a confidential reliable source informed Minneapolis police that appellant Tavaires Higgins was dealing drugs. The source claimed that appellant drove a 2005 GMC Yukon and lived near a Burger King at Lowry Avenue North and Washington Avenue North. Officer Lepinski patrolled the area described by the source and located a 2005 GMC Yukon parked in the rear driveway of a residence. Officer Lepinski began surveillance of the residence and over a ten-day period saw appellant coming and going from the residence on multiple occasions. The Yukon was at the residence on each of these occasions.

Based on these observations, Officer Lepinski applied for a search warrant to search appellant's residence. The application stated that Officer Lepinski conducted a "garbage pull" from the city-owned garbage can that was located in the "rear driveway" of the residence. The trash cans for the residence and its two neighboring homes were located in the rear of the homes but did not have any identifying marks to indicate which specific houses they came from. An aerial-view photograph taken shortly after the incident indicates that the "rear driveway" intersects with an alley running north and south along the block between Lowry Avenue North and 33rd Avenue North. This alley was accessible via a neighbor immediately north of the residence or directly accessible via 33rd Avenue North. An industrial area was located immediately west of the "rear driveway," and a public parking lot was located immediately north.

2

During the garbage pull, Officer Lepinski removed two black garbage bags from the can for examination. The contents of the garbage bags contained plant leaves and stems which field-tested positive for marijuana and a white residue which field-tested positive for cocaine. Also recovered was a quantity of plastic baggies that had the corners cut off, which Officer Lepinski identified as "indicative of narcotics packaging." Based on this information, a search warrant for the residence was issued, and a group of Minneapolis police officers searched the residence. Officers located appellant in the living room of the residence, placed him in handcuffs, and searched his person. Officers located a handgun and a box of ammunition in one of the upstairs bedrooms.

Appellant was charged with one count of possession of a firearm by a prohibited person in violation of Minn. Stat. § 624.713, subd. 1(2) (2010). Appellant moved to suppress the evidence of the firearm, arguing that the warrantless garbage search was unconstitutional and that the subsequent search warrant was therefore not supported by probable cause. The district court denied the motion and the case proceeded to a jury trial. Before trial, appellant stipulated that he was a person prohibited from possessing a firearm on May 17, 2011, and the jury was instructed accordingly. The jury found appellant guilty.

After trial, appellant moved for a new trial and, alternatively, to dismiss the case. In arguing for dismissal, appellant renewed his motion for suppression of the firearm. The district court denied the motion.

At sentencing, appellant asked for a downward dispositional departure from the sentencing guidelines, arguing that the jury had not found that his prior offense involved

a firearm.  The district court refused to depart, stating that appellant had stipulated to a previous conviction listed under Minn. Stat. § 609.11, subd. 9 (2010), which necessitated a mandatory 60-month sentence.  This appeal followed.

## D E C I S I O N

### I.    The warrantless search of appellant's garbage was constitutional.

"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo."  *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted).  We independently review facts not in dispute and determine, as a matter of law, whether the evidence must be suppressed.  *See id*.

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures by the government.  U.S. Const. amend. IV; Minn. Const. art. I, § 10.  Generally, an unlawful search or seizure under the Fourth Amendment occurs when an individual's reasonable expectation of privacy is invaded.  *Katz v. United States*, 389 U.S. 347, 353, 88 S. Ct. 507, 512 (1967).  And generally, evidence unconstitutionally seized must be suppressed.  *State v. Jackson*, 742 N.W.2d 163, 177-78 (Minn. 2007).  We note that, despite his contention otherwise, appellant has the burden of establishing that his Fourth Amendment rights were violated by the search.  *See Rakas v. Illinois*, 439 U.S. 128, 130, 99 S. Ct. 421, 424 n.1 (1978) ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."); *see also State v. Davis*, 732 N.W.2d 173, 178 (Minn. 2007) (explaining that the defendant had the burden of showing that a dog sniff which occurred

4

in a common hallway violated his Fourth Amendment rights); *State v. Licari*, 659 N.W.2d 243, 249 (Minn. 2003) (explaining that a defendant must first establish a legitimate expectation of privacy in a storage unit before contesting its search).

We first determine whether the search took place within appellant's curtilage. "A dwelling's curtilage is generally the area so immediately and intimately connected to the home that within it, a resident's reasonable expectation of privacy should be respected." *Garza v. State*, 632 N.W.2d 633, 639 (Minn. 2001). The purpose of the curtilage determination is to aid the courts in deciding "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *State v. Krech*, 403 N.W.2d 634, 637 (Minn. 1987) (quoting *United States v. Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 1140 (1987)). *Krech* applied the four criteria utilized in *Dunn* to determine the extent of a dwelling's curtilage:

> [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.

*Id.* at 636-37 (quoting *Dunn*, 480 U.S. at 301, 107 S. Ct. at 1139).

An individual does not have a reasonable expectation of privacy in garbage left at the curb. *California v. Greenwood*, 486 U.S. 35, 40, 108 S. Ct. 1625, 1629 (1988). We note that if the garbage cans were at the end of the driveway next to the alleyway, then they would likely be akin to garbage placed on the curb for collection and thus not within the home's curtilage. *See, e.g., State v. McMurray*, 860 N.W.2d 686, 695 (Minn. 2015) (holding that a warrantless search of garbage does not violate the Fourth Amendment)

5

(citing *Greenwood*, 486 U.S. at 40, 108 S. Ct. at 1629); *Krech*, 403 N.W.2d at 636-37 (holding no Fourth Amendment violation where garbage was left a few feet from an alley and searched by police); *State v. Dreyer*, 345 N.W.2d 249, 250 (Minn. 1984) (holding that police did not violate a defendant's Fourth Amendment rights by searching garbage left at curb); *State v. Oquist*, 327 N.W.2d 587, 591 (Minn. 1982) (holding no Fourth Amendment violation where deputies picked up plastic garbage bags near a public alley while not leaving paved portion of alley to reach the bags); *State v. Goebel*, 654 N.W.2d 700, 703-04 (Minn. App. 2002) (holding no Fourth Amendment violation where garbage bags were left for collection on curb at end of driveway). We conclude that the search did not take place within the curtilage of appellant's home. The first *Krech* factor requires us to examine the proximity of the garbage cans to the home. 403 N.W.2d at 636-37. The only record evidence relating to the exact proximity of the cans is the reference to them being located in the "rear driveway" behind the three residences. There is no indication whether this means the cans were at the end of the driveway next to the rear alleyway, or if they were closer to the actual residence. Because, as established above, appellant had the burden of establishing that the search violated his Fourth Amendment rights, the lack of record evidence on this point cuts against appellant and in favor of a determination that the search did not occur within the residence's curtilage.

The remaining factors all weigh in favor of determining that the search did not occur within the curtilage of the residence. The second *Krech* factor asks whether the area is included within an enclosure. *Id.* at 637. The aerial photograph does not show any enclosures around the "rear driveway." Furthermore, appellant's suppression

memorandum states that "[t]he trash cans are situated next to each other" and appellant's affidavit states that "[e]ach of the houses has trash cans and they are not marked or identified." This is further evidence that the area was not enclosed because appellant's neighbors had access to the area. The third *Krech* factor focuses on the nature of the uses to which the area is put. *Id.* In *Krech*, the Minnesota Supreme Court recognized a diminished expectation of privacy in an area adjoining a multiple-occupancy building because it was "not subject to the exclusive control of one tenant." *Id.* (quotation omitted). While a multiple-occupancy building is not at issue here, similar reasoning applies to an area used by both appellant and his neighbors. Because they all used the area to store their trash cans, it was not "subject to the exclusive control" of appellant. The final *Krech* factor analyzes the steps taken by the resident to protect the area from observation by people passing by. *Id.* There were no steps taken by appellant to protect the area from observation even though it was located next to an industrial area and a parking lot accessible to the public. In sum, because the "rear driveway" area fails the *Krech* analysis, it was not under the "umbrella" of Fourth Amendment protection and the search was thereby constitutional.[1]

Appellant offers a final argument that, as a matter of law, driveways are considered curtilage under *State v. Crea*, 305 Minn. 342, 233 N.W.2d 736 (1975). In *Crea*, police officers walked down a defendant's driveway to inspect two snowmobile

---

[1] Appellant also argues that the Minnesota Constitution affords greater protection against warrantless police searches of garbage than the United States Constitution. This argument was expressly rejected in *State v. McMurray*, 860 N.W.2d 686, 693-94 (Minn. 2015).

trailers, one "in front of an unattached garage" and one "right behind the house." *Id*. at 343-44, 233 N.W.2d at 738. The supreme court concluded that this intrusion was justified, reasoning that "[t]he police had a right to walk onto the driveway because it was an area of the curtilage impliedly open to use by the public." *Id*. at 346, 233 N.W.2d at 739. We do not read *Crea* to be so broad as to mean that every part of every driveway is considered curtilage. Instead, the supreme court's discussion in *Crea* is limited to those specific facts. *See id*. ("[W]e have no difficulty in sustaining the initial intrusion of the police, *specifically*, their walking onto the driveway and their examination of the trailers which were in plain sight." (emphasis added)). Accordingly, we do not agree that driveways have been deemed curtilage as a matter of law.

## II.     The district court did not err by imposing a mandatory 60-month sentence.

Prior to trial, the parties agreed to stipulate that appellant was prohibited from possessing a firearm on May 17, 2011, the day the police executed the search warrant on the residence. Making this stipulation "remov[ed] the issue from the case," *State v. Berkelman*, 355 N.W.2d 394, 396 (Minn. 1984), and the predicate conviction prohibiting appellant from possessing a firearm was not presented to the jury. The jury then convicted appellant of being a prohibited person in possession of a firearm in violation of Minn. Stat. § 624.713, subd. 1(2). He was given the mandatory minimum sentence of 60 months as required by Minn. Stat. § 609.11, subd. 5(b) (2010).

Appellant argues that, despite his stipulation, he was entitled to a jury trial to determine whether his previous convictions were committed with the use or possession of a firearm. *See* Minn. Stat. § 609.11, subd. 8(b) (2010). Under appellant's view of section

8

609.11, a 60-month sentence is only mandatory if there is a prior conviction on the subdivision 9 list which involved the use or possession of a firearm. Because appellant's argument implicates a question of statutory interpretation, we apply de novo review. *State v. Jones*, 848 N.W.2d 528, 535 (Minn. 2014).

Section 609.11 sets out minimum sentences for certain crimes. *See generally* Minn. Stat. § 609.11 (2010). Under subdivision 5(b), "[a]ny defendant convicted of violating section 609.165 or 624.713, subdivision 1, clause (2) shall be committed to the commissioner of corrections for not less than five years. . . ." *Id.*, subd. 5(b). It is undisputed that appellant was convicted of violating Minn. Stat. § 624.713, subd. 1(2). But appellant does not challenge the sufficiency of the evidence underlying that conviction. As such, the district court was required to sentence him to five years under section 609.11, subdivision 5(b). *See* Minn. Stat. § 645.44, subd. 16 (2010) (defining the term "shall" as mandatory).

There exists, however, an exception to the mandatory minimum sentence. Under section 609.11, subdivision 8(a), a district court may sentence a defendant "without regard" for the five-year presumptive sentence if the court finds "substantial and compelling reasons to do so." Minn. Stat. § 609.11, subd. 8(a). This exception does not apply here because the district court did not make such a finding. The sentencing order shows that the district court was "not swayed by the defense argument [that] [appellant] has demonstrated himself to be law abiding" and recognized that appellant "has not—even after detailed and multiple inquiries from the [district] court—accepted responsibility for this offense" but instead "asserts he was in the wrong place at the

9

wrong time." Because the district court did not find substantial and compelling reasons to depart, we affirm the imposition of the mandatory minimum sentence under subdivision 5(b).

Alternatively, we note that even if the district court did find substantial and compelling reasons to depart, the district court is not required to do so. Subdivision 8(a) states that "[w]hen presented with the motion, or on its own motion, the court *may* sentence the defendant without regard to the mandatory minimum sentences established by this section if the court finds substantial and compelling reasons to do so." *Id.*, subd. 8(a) (emphasis added). "'May' is permissive." Minn. Stat. § 645.44, subd. 15 (2010). Thus, even if a district court finds substantial and compelling reasons to depart, subdivision 8(a) still accords the district court discretion to impose a 60-month sentence should it choose to do so.

Instead of analyzing the mandatory sentencing requirements under subdivision 5(b) and its exception under subdivision 8(a) as we have done above, appellant begins his analysis at subdivision 8(b) and subdivision 9, which are essentially exceptions to the exception. But as previously illustrated, the exception under subdivision 8(a) is not applicable here because the district court did not find substantial and compelling reasons to depart. Therefore, appellant's reliance on subdivision 8(b) and subdivision 9 are mistaken.

   **Affirmed.**