McKEIG, Justice (dissenting).
In July 2011, Maplewood resident B.F. inadvertently spotted his stolen pop-up camper as he was driving by the home of defendant Quentin Todd Chute. Although the camper was parked on Chute's property, it was located some distance away from Chute's house and was plainly visible from the public roadway. B.F. called the police and an officer responded to Chute's residence. Together, B.F. and the officer walked down the dirt driveway adjacent to Chute's home and verified that this was the stolen camper belonging to B.F. before approaching the home.
The majority holds that the officer committed a warrantless search in violation of the Fourth Amendment because the officer entered the "curtilage" of Chute's home with the purpose of conducting a search. Because I do not agree that the officer trespassed onto Chute's protected curtilage before approaching the home to speak to him, I respectfully dissent.
Not all law enforcement investigations conducted on private property constitute a "search" in violation of the Fourth Amendment. Warrantless investigations conducted in "open fields"-areas of a defendant's property which are not included in the home or its curtilage-do not violate the *589 Fourth Amendment. Oliver v. United States , 466 U.S. 170, 176, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Accordingly, the first step in determining whether a Fourth Amendment search occurred on Chute's property is determining whether the officer conducted an investigation within the curtilage of Chute's home.
To determine whether an area is curtilage, we apply the four factors articulated by the Supreme Court in United States v. Dunn : "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). The curtilage determination is thus a fact-intensive one, and our conclusion that an area is curtilage must rely on facts developed in the district court record. Cf. Garza v. State , 632 N.W.2d 633, 639 (Minn. 2001) (remanding to the trial court when record was insufficient to determine whether an area was curtilage); State v. Sorenson , 441 N.W.2d 455, 458 (Minn. 1989) (noting that "it is impossible to determine from the scant trial court record" whether the area in question was curtilage).
Here, the district court did not make a curtilage determination before deciding that the officer had a lawful right to enter Chute's driveway and examine the camper. Instead, the district court relied on our decisions in State v. Krech , 403 N.W.2d 634 (Minn. 1987), and State v. Crea , 305 Minn. 342, 233 N.W.2d 736 (Minn. 1975), to conclude that the unpaved area surrounding Chute's home was a "driveway," and therefore "impliedly open to use by the public," rendering the officer's presence and conduct within the space lawful. The district court did not consider whether any or all of the driveway was included in Chute's curtilage.[1] For that reason, the district court's factual findings are not particularly helpful for the purpose of applying the Dunn factors.
*590 If we look beyond the limited findings of the district court, the facts that are in the record suggest that the area where the camper was parked, and the path leading up to it, were not included in the curtilage. Based on aerial photographs of Chute's property, it is fair to estimate that the camper was parked approximately 50 feet away from Chute's home, near the far south-eastern corner of the gravel driveway, which looks to be about 20 feet wide and 80-100 feet long. A fence abuts the eastern side of the property, and the back side of the property is lined with trees. Photographs and testimony from the suppression hearing demonstrate that two cars were parked near the camper, but there is no evidence that the driveway or the edge of Chute's property was used for any purpose other than a turn-around or extra parking.[2] It is clear that the camper, the area where it was parked, and the path from the street to the back of the drive were plainly visible and accessible from the street.
Applying the Dunn factors, the facts in the record weigh against a conclusion that the area in question was a part of Chute's curtilage. It can be argued that two of the factors-proximity of the area to the home and enclosure of the area-weigh in favor of determining that the area is curtilage, but only narrowly. The majority points out that the driveway "runs directly next to" Chute's house, but that fact is not dispositive of whether the driveway was included in the curtilage. See United States v. Beene , 818 F.3d 157, 162 (5th Cir. 2016) (holding that the driveway proximate to the house was not included in the curtilage); United States v. Wells , 648 F.3d 671, 678 (8th Cir. 2011) (observing that a driveway alongside house was not entirely within the curtilage).
For the enclosure factor, the majority notes that the area in question was "bordered on three sides by a tall, opaque fence on the east side, a small pond on the south side, and some trees on the west side." Even assuming that a fence on one side and an indeterminate number of trees on two other sides constitute an "enclosure" (which I am not certain that they do) any weight from this factor is completely counter-balanced by the fourth Dunn factor-the steps taken by the resident to obscure the area from passers-by. 480 U.S. at 301, 107 S.Ct. 1134. This record makes plain that Chute took absolutely no steps to obscure the camper or the driveway leading to it from the view of passers-by. B.F. discovered his camper by happenstance while driving past Chute's residence. Such would not be possible unless the camper was plainly visible from the public roadway. Yet, the majority characterizes the area where the camper was parked as "visible from County Road D if an observer stands at its northern end and looks directly down it," suggesting that the area is obscured unless an observer is standing directly in front of Chute's driveway. The record demonstrates otherwise.
Finally, I disagree with the majority's determination that the third Dunn factor-"the nature of the uses to which the area is put"-"weighs heavily in Chute's favor." The majority relies on the district court's findings that the "driveway and turnaround were 'regularly used by cars carrying persons seeking a backdoor entrance *591 to the house and garage,' " and that the driveway was well-worn. These findings only speak to the fact that the area in question was part of a driveway; they do not speak to any "intimate" use to which the area was put.
The majority also cites United States v. Wells for the proposition that individuals "may expose portions of the curtilage of [their] home[s] to public view while still maintaining some expectation of privacy in those areas." 648 F.3d at 678. In Wells , the Eighth Circuit reviewed a district court determination that the backyard , including "part of the driveway" behind the defendant's home, was included in the protected curtilage of his home. Id. at 674, 677. The district court had found that "the backyard area was fenced in on three sides," and "the backyard could not be viewed from the street." Id. at 674. Applying the Dunn factors, the Eighth Circuit agreed that the area where law enforcement trespassed and searched was within the curtilage because it was "just behind the home and only a few feet from it." Id. at 677. The court noted that the record contained ample evidence that the backyard was put to intimate use-"it contain[ed] a child's wagon and sled, a boat, a lawnmower, a rabbit hutch, and a burn barrel." Id. The court credited the fact that the backyard was not visible from the street, and that officers had to walk around the house via the unpaved drive in order to access the area in which they stood. Id. Notably, the court said, "Wells certainly exposed his unpaved driveway to public view, and therefore could not reasonably expect that members of the public would not observe whatever he might do there ." Id. at 678 (emphasis added). In so stating, the court clearly distinguished the unpaved driveway, which was fully visible and accessible from the street, from the obscured part of the backyard where law enforcement executed an unlawful search. Id.
United States v. Beene provides a useful comparison. In that case, the Fifth Circuit determined that the defendant's driveway, though proximate to the home, was not included in the curtilage:
[O]nly the driveway's proximity to the residence weighs in favor of a finding that it was part of the curtilage of the home. The driveway was open and could be observed from [the] [s]treet. Although fences encircled part of the driveway, nothing blocked its access or obstructed its view from the street. Finally, neither [the defendant nor his wife] took steps to protect their privacy, such as posting "no trespassing" signs.
818 F.3d at 162. Despite the proximity factor, the court was clear: based on the Dunn factors, "Beene's driveway qualifies as an open field." Id. at 163.
We have said that "the term 'curtilage' defies precise definition," Sorenson , 441 N.W.2d at 458, but whether an area is constitutionally protected ultimately comes down to whether the defendant possesses an "actual expectation of privacy" in the area that "society is prepared to recognize as reasonable." State v. Colosimo , 669 N.W.2d 1, 5 (Minn. 2003) (quoting Bond v. United States , 529 U.S. 334, 338, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000) ). It is not sufficient to simply call an area a "backyard" or "driveway" and categorically presume that it is curtilage. Based on this record, I cannot conclude that the area of Chute's property where B.F.'s stolen camper was parked and the path leading to it from the street were included in Chute's curtilage. For that reason, I would hold that the officer lawfully conducted his investigation in "open fields" and then entered Chute's curtilage with the purpose of seeking him out, as is permitted under Florida v. Jardines. See *592 569 U.S. at 6, 133 S.Ct. 1409. On these grounds, I respectfully dissent.

Conspicuously, the majority does not address whether, following Florida v. Jardines , 569 U.S. 1, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013), the district court applied the correct legal standard. As the majority notes, Jardines introduced a "purpose limitation" on an officer's implied license to trespass on the curtilage. Under Jardines , officers may not trespass on the curtilage with the purpose to investigate or search, with the exception that they may walk to the front door with the purpose of soliciting the resident. Id. at 8-10, 133 S.Ct. 1409. Other behavior-such as peering through the windows or snooping through the garden-exceeds the scope of the officer's implied license to trespass on the curtilage. Id. at 6, 133 S.Ct. 1409.
Krech , and to a greater degree, Crea , authorize a much broader range of conduct. In Crea , the officers entered the defendant's driveway with the purpose to investigate two purportedly stolen trailers parked therein. 233 N.W.2d at 739. We said that when police are present in areas that are "impliedly open to use by the public," like a driveway, they are "free to keep their eyes open." Id ."Because of this, we have no difficulty sustaining the initial intrusion of the police, specifically, their walking onto the driveway and their examination of the trailers in plain sight ." Id. (emphasis added). Krech , citing Crea , stated that "police do not need a warrant or even probable cause to approach a dwelling in order to conduct an investigation if they restrict their movements to places visitors could be expected to go (e.g. walkways, driveways, porches)." 403 N.W.2d at 637 (emphasis added) (internal quotations omitted). Thus, under Krech and Crea , the key inquiry is whether the area in question is "an area impliedly open to use by the public"-in which case investigative behavior is theoretically permissible-not whether an area is within the curtilage. Because these cases set only spatial limitations on the implied license to enter the curtilage and suggest that there are no purpose limitations on the license, they may require reconsideration in light of Jardines .

The majority notes the presence of a "fire pit" situated between Chute's house and the area where the camper was parked. One photograph of Chute's property shows what might generously be called a "burn pile" and a portion of a large log is also visible. Absent findings from the district court, it is impossible to tell whether this area was used as a traditional "fire pit" or gathering place as the majority's comparison to Widgren v. Maple Grove Twp. , 429 F.3d 575, 582 (6th Cir. 2005), suggests.