# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2026 ND 11

State of North Dakota,                                    Plaintiff and Appellee

v.

Christopher John Golberg,                              Defendant and Appellant

### No. 20250224

Appeal from the District Court of Mercer County, South Central Judicial District, the Honorable Bobbi B. Weiler, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Justice, in which Chief Justice Fair McEvers and Justices Tufte and Bahr joined. Justice Crothers filed an opinion dissenting.

Todd A. Schwarz, State's Attorney, Stanton, ND, for plaintiff and appellee; submitted on brief.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Jensen, Justice.**

[¶1]   Christopher Golberg appeals from an amended criminal judgment entered after a jury found him guilty of child neglect. He argues the district court erred when it denied his motion to suppress evidence seized after a search, and he asserts the evidence presented at trial is insufficient to support the guilty verdict. We affirm the judgment.

I

[¶2]   Social workers and a detective went to the home of Golberg's then-girlfriend, Shantel Lais, to investigate whether Golberg assaulted Lais's daughter. They entered an open garage door, knocked on an interior entryway door, and were let into the home by Lais. The State alleged that, once in the home, Lais gave the detective consent to search, and he found the residence to be "a complete and utter mess" with various firearms and open alcohol containers within the reach of Lais and Golberg's two-year-old child. The State also alleged the detective found drugs and drug paraphernalia.

[¶3]   The State charged Golberg with unlawful possession of drug paraphernalia, unlawful possession of a firearm, and child neglect. Golberg moved to suppress evidence obtained from the home. He argued the detective illegally entered the garage. The district court held a suppression hearing. The detective was the only witness. He testified:

> Q. Who went to that door first?
>
> A. The social workers both went to that door. It'd be the walk-through door, Your Honor. Not the primary garage door itself, but the walk-through door. When I walked up, that door was wide open. You could see inside the garage.
>
> Q. So what happened then?

A. I could see no front door on the front of the house. There was a—a new extension had been built on the front of the house. There was no other door. So the social worker, she was knocking on the outside. We heard nothing. The social worker then walked into the garage. I could hear a pit bull barking. She walked up to what would be a screen door, which would lead into the kitchen of the house. She never went in, but she knocked on the door. Once she knocked on the door, the pit bull charged the door. I rushed in, blocked the door with my foot so the dog didn't get out and bite anyone.

Q. So it's the screen door, you were walking—

A. That's correct.

Q. —toward the dog, from coming into the garage?

A. I believe there's a white screen door.

Q. Okay.

A. I stopped the dog from coming in. We continued to knock on the door, waiting for Ms. Lais to come to the door. We could see the little boy running around inside, and then Ms. Lais did finally come to the door and let us in.

[¶4]   The district court denied Golberg's suppression motion. The court found "the garage entrance was open to the public and functioned as the main access point due to ongoing construction at the home." Based on its findings, the court determined Golberg did not have a reasonable expectation of privacy in the garage and consequently his constitutional rights were not violated.

[¶5]   The case proceeded to trial, where the State presented testimony from a social worker, the detective, and Lais. At the conclusion of the State's case, Golberg moved under North Dakota Rule of Criminal Procedure 29 for judgment of acquittal. He argued there was no evidence to establish he lived at the residence. The district court denied the motion. Golberg then testified. He admitted he was at the home on the night before the search but claimed he did not notice its condition because he was sleeping. Golberg renewed his Rule 29 motion after his testimony, which the court again denied. The jury found him

2

guilty of child neglect and not guilty of the other charges. A criminal judgment was entered and subsequently amended. Golberg appeals.

II

[¶6]   "The Fourth Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment, and Article I, section 8, of the North Dakota Constitution, protect individuals from unreasonable searches and seizures." *State v. Gothberg*, 2024 ND 217, ¶ 11, 14 N.W.3d 578 (quoting *State v. Terrill*, 2018 ND 78, ¶ 7, 908 N.W.2d 732). "A search does not occur unless the government violates an individual's reasonable expectation of privacy." *State v. Nguyen*, 2013 ND 252, ¶ 8, 841 N.W.2d 676 (quoting *State v. Mittleider*, 2011 ND 242, ¶ 14, 809 N.W.2d 303). Two requirements must be satisfied for a reasonable expectation of privacy to exist: "First that a person has exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as reasonable." *Id.* (cleaned up).

[¶7]   Evidence seized as the result of an unlawful search must generally be suppressed under the exclusionary rule. *State v. Pogue*, 2015 ND 211, ¶ 9, 868 N.W.2d 522. The exclusionary rule is a judicial sanction meant to deter police misconduct by not allowing convictions to be obtained from illegally seized evidence. *State v. Holly*, 2013 ND 94, ¶ 48, 833 N.W.2d 15. The exclusionary rule safeguards rights generally through its deterrent effect and is not a personal constitutional right of the aggrieved party. *State v. Bachmeier*, 2007 ND 42, ¶ 9, 729 N.W.2d 141.

[¶8]   A defendant seeking to suppress evidence on the basis that a search was unconstitutional bears the initial burden of establishing a prima facie case that the evidence was illegally seized. *City of Jamestown v. Casarez*, 2021 ND 71, ¶ 16, 958 N.W.2d 467. "The movant initially has the burden to make specific allegations of illegality and to produce evidence to persuade the court the evidence should be suppressed." *Pogue*, 2015 ND 211, ¶ 10. If the defendant makes a prima facie case, the burden shifts to the State to "justify its actions." *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 6, 571 N.W.2d 137.

3

[¶9] We apply the following standard when reviewing a district court's decision on a motion to suppress:

> We give deference to the district court's findings of fact and we resolve conflicts in testimony in favor of affirmance. We will not reverse a district court decision on a motion to suppress if there is sufficient competent evidence capable of supporting the court's findings, and if the decision is not contrary to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law. Whether law enforcement violated constitutional prohibitions against unreasonable search and seizure is a question of law.

*Pogue*, 2015 ND 211, ¶ 8 (cleaned up).

A

[¶10] The State argues Golberg lacks standing to challenge the search. The State notes Golberg claimed at trial he did not live in the home. The State asserts Golberg, who was "merely a visitor," did not have a reasonable expectation of privacy giving rise to constitutional protections.

[¶11] "Individuals ordinarily cannot seek suppression of evidence based on the violation of a third-party's rights." *State v. West*, 2020 ND 74, ¶ 9, 941 N.W.2d 533. Defendants are only protected from unreasonable searches and seizures in places where they personally have a reasonable expectation of privacy. *State v. Oien*, 2006 ND 138, ¶ 8, 717 N.W.2d 593. "Although the court no longer makes a determination of whether an individual has 'standing' in the traditional sense, the term continues to be used to refer to the concept of 'reasonable expectation of privacy.'" *Id.* (quoting *State v. Huether*, 453 N.W.2d 778, 780 n.1 (N.D. 1990)). Guests generally have a reasonable expectation of privacy in their host's home. *Id.* ¶ 9. However, a guest's expectation of privacy does not last indefinitely. *See State v. Williams*, 2016 ND 132, ¶ 12, 881 N.W.2d 618 (explaining hotel guests' expectation of privacy terminates when their rental expires).

[¶12] The district court did not assess whether Golberg was a visitor without a reasonable expectation of privacy in the home. The factual record on this issue

4

was not developed at the suppression hearing. The State acknowledges that "Golberg living at the Mercer County address was not disputed at the suppression motion hearing." The State instead claimed the interaction was a constitutional "walk and talk." Issues not presented in the district court will not be addressed on appeal. *Mead v. Hatzenbeller*, 2023 ND 248, ¶ 21, 999 N.W.2d 618. We decline to address this issue because it was not raised in the district court during the suppression proceedings.

B

[¶13] Golberg argues the detective violated his rights by entering the garage without permission or a warrant. He claims the detective's unlawful intrusion into the garage tainted Lais's consent to the search of the residence. He asserts all of the evidence obtained from inside the home must be suppressed because it is fruit of the poisonous tree.

[¶14] "The home is an area constitutionally protected, as 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *State v. Kitchen*, 1997 ND 241, ¶ 13, 572 N.W.2d 106 (quoting *Payton v. New York*, 445 U.S. 573, 585 (1980)). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton*, at 590. The location of a home's "threshold" is not always clear. *Kitchen*, ¶ 14. "[P]olice with legitimate business may enter certain areas surrounding a home where persons may have a reasonable expectation of privacy, such as curtilage, but which are 'impliedly open to use by the public.'" *State v. Winkler*, 552 N.W.2d 347, 352 (N.D. 1996) (quoting *State v. Crea*, 233 N.W.2d 736, 739 (Minn. 1975)). Whether a structure attached to a home is open to the public, such as a porch, vestibule, or entryway, is a fact-specific inquiry. *Kitchen*, ¶ 14. "We must look at the reasonableness of each situation, giving due consideration to the particular characteristics of the home in question[.]" *Id.*

[¶15] Police may not enter a private enclosed entrance when there is a more direct alternative access designated for public use. In *State v. Blumler*, 458 N.W.2d 300 (N.D. 1990), a deputy sheriff attempted to serve a man civil papers at his

5

residence. The deputy chose to use an entrance inside a garage despite both the overhead and walk-in door being closed. *Id.* After opening the garage's walk-in door without knocking, the deputy observed evidence of a crime. *Id.* at 301. This Court upheld suppression of the evidence. *Id.* The Court explained individuals "ordinarily" have a reasonable expectation of privacy in a garage and the particular house in question had at least three outer entrances, including a front door. *Id.* at 302.

[¶16] An enclosed area may sometimes be the most direct access to a home's threshold and designated for public use. In *State v. Kitchen*, police attempted to serve an arrest warrant on a man. 1997 ND 241, ¶ 2. They believed he was in a residence with "a narrow enclosed entryway with steps leading to an inner door approximately five or six feet away." *Id.* ¶ 3. The outer door "was a metal storm/screen door with a large glass window." *Id.* The officers rang the doorbell next to the outer door. *Id.* ¶ 4. After no one answered, they entered and proceeded to the inner door, which an occupant opened. *Id.* The officers then smelled marijuana, obtained a search warrant, searched the residence, and seized evidence of a crime. *Id.* ¶ 5. This Court declined to order suppression of the evidence. *Id.* ¶ 1. The Court explained that, unlike the deputy in *Blumler*, who "chose the garage door instead of a more direct access to the residence," the "officers in the present case had only one access to the Kitchens' residence." *Id.* ¶ 17. The Court gave "deference to the trial court's finding that the officers entered the home as any member of the public would enter." *Id.* ¶ 20.

[¶17] Golberg argues his case is analogous to *State v. Kochel*, 2008 ND 28, 744 N.W.2d 771, where this Court reversed a district court's decision not to suppress evidence. In *Kochel*, law enforcement went to a mobile home in a rural area to perform a welfare check. *Id.* ¶¶ 2-3. There were steps leading to a door on an addition attached to the mobile home. *Id.* ¶ 2. There was a "no hunting or trespassing" sign mounted on the handrail next to the steps. *Id.* The addition's entryway door was halfway open. *Id.* ¶ 3. An officer knocked on the doorframe and yelled inside. *Id.* After no one responded, the officer went into the addition. *Id.* Inside the addition, there was an open door leading into the mobile home. *Id.* The officer was able to view evidence of a crime through the open interior door. *Id.* This Court explained the no-trespassing sign "alerts members of the public

that [the] addition is a private area not accessible without the resident's permission" and "uncertainty that the addition is an integral part of the home where privacy is reasonably expected is removed by the presence of the sign." *Id.* ¶ 9.

[¶18] Unlike *Kochel*, there is no evidence in this case of express signage warning unexpected guests they were unwelcome in the garage. Nor is this case like *Blumler* where law enforcement chose to enter a closed garage despite the presence of a front door. This case is more analogous to *Kitchen*, where the most direct access to the home's threshold was through an enclosed space open to the public. The State submitted photos of the home that corroborated the detective's testimony that there was no other front door access because the home was under construction. The district court found:

> [T]he primary entrance to the home was through the garage, which had been used repeatedly by social workers. The only other potential entrance would have required the officer to walk through the yard and approach the back of the residence. Moreover, the record does not clearly establish whether those alternative entrances were accessible . . . . At the time, the garage entrance was open to the public and functioned as the main access point due to ongoing construction at the home. The officer had a legitimate purpose for being at the residence, as he was assisting Social Services with an assault investigation. When the officer arrived, the exterior garage door was open.

The court's findings are supported by the evidence. Based on these findings, the deputy did not illegally cross the threshold of the home into an area where a reasonable expectation of privacy existed. Golberg has not established a constitutional violation. The court did not err when it denied his motion to suppress evidence.

### III

[¶19] Golberg argues the evidence is insufficient to support the jury's finding that he committed child neglect. We apply the following standard when reviewing a challenge to the sufficiency of the evidence:

When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses. . . . A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty.

*State v. Guthmiller*, 2025 ND 162, ¶ 7, 26 N.W.3d 548 (quoting *State v. Noble*, 2023 ND 119, ¶ 4, 992 N.W.2d 518).

[¶20] Golberg argues the evidence is insufficient to prove he willfully committed child neglect because there is nothing to prove he knew about the conditions in the home. In his words, "Without knowledge of the conditions, Mr. Golberg could not have willfully failed to address them." However, his own testimony provided evidentiary support for a finding of willfulness. At trial, although he denied noticing the state of the home, Golberg admitted to being there and staying for "probably three-and-a-half hours[.]" When viewed in a light favorable to the verdict, the evidence supports a reasonable inference of guilt.

IV

[¶21] The district court's findings support a determination that an illegal search did not occur because no reasonable expectation of privacy existed in the garage. There is sufficient evidence to support the jury's finding that Golberg committed child neglect. The amended criminal judgment is affirmed.

[¶22] Lisa Fair McEvers, C.J.
Jerod E. Tufte
Jon J. Jensen
Douglas A. Bahr

**Crothers, Justice, dissenting.**

8

[¶23] I respectfully dissent.

[¶24] I agree with Part II A of the majority opinion that, on this record, we should not decide whether Golberg had standing to challenge the search. Majority, ¶¶ 10-12.

[¶25] I disagree with the remainder of the majority opinion, in particular their conclusions the district "court's findings are supported by the evidence" and that "the deputy did not illegally cross the threshold of the home into an area where a reasonable expectation of privacy existed." Majority, ¶ 18.

[¶26] An individual has a reasonable expectation of privacy in an attached garage. *State v. Blumler*, 458 N.W.2d 300, 302 (N.D. 1990). Our precedent makes clear, "[i]t is well settled that a garage is an intimate part of a person's residence and, therefore, is an area in which the person has a reasonable expectation of privacy against warrantless intrusions by the State." *Id.* (citing *Lubenow v. N.D. State Highway Comm'r*, 438 N.W.2d 528 (N.D. 1989); *State v. Manning*, 134 N.W.2d 91 (N.D. 1965). *See generally* 5 L. Orfield, *Criminal Procedure* §§ 44:10, 44:11 (1987)).

[¶27] In this case, two social workers and law enforcement (all representatives of the State) intruded into that private area to do precisely what we said in *Blumler* officers could not do—they entered an attached garage to attempt to gain access to the home through an interior door. 458 N.W.2d at 302.

[¶28] In *Blumler*, this Court determined the defendant had a reasonable expectation of privacy that was violated when officers entered his attached garage to knock on an interior door. 458 N.W.2d at 300-02. In *State v. Winkler*, we concluded a defendant had a reasonable expectation of privacy in an open, unattached garage. 552 N.W.2d 347, 352 (N.D. 1996). The majority steps over the holdings in these cases to rely instead on *State v. Kochel*, 2008 ND 28, 744 N.W.2d 771.

[¶29] In *Kochel*, this Court held police officers with legitimate business may enter areas of the home impliedly open to the public, but determined a carpeted addition was an integral part of the home. 2008 ND 28, ¶¶ 9-12 (applying the rule from *State v. Kitchen*, 1997 ND 241, ¶ 15, 572 N.W.2d 106). In *Kochel*, we

determined a no-trespassing sign removed "[a]ny uncertainty that the addition is an integral part of the home where privacy is reasonably expected . . . ." *Id.* ¶ 9.

[¶30] The majority differentiates this case from *Kochel* and *Blumler* and analogizes to *Kitchen*. In attempting to distinguish *Kochel*, the majority considered the lack of a no-trespassing sign on the garage here as an indication the public is welcome. ("[T]here is no evidence in this case of express signage warning unexpected guests they were unwelcome in the garage." Majority, ¶ 18, (citing *Kochel*, 2008 ND 28)). In *Kochel*, this Court recognized the no-trespassing sign on the curtilage of the home as evidence supporting the occupant's reasonable expectation of privacy. However, failing to have a no-trespassing sign on an intimate area of home does not provide evidence the occupant has relinquished the reasonable expectation of privacy. This negative inference against Golberg cuts against the plain rule that citizens have a reasonable expectation of privacy in their garage and other intimate parts of the home. *Blumler*, 458 N.W.2d at 302. In fact, such a holding takes a dangerous step in the wrong direction and significantly weakens what the Fourth Amendment is designed to protect by placing the burden on an occupant to take affirmative steps to preserve an expectation of privacy in their homes and garages.

[¶31] In differentiating this case from *Blumler*, the majority notes the garage in *Blumler* was closed. Majority, ¶ 18. This too is a false distinction. Whether the garage was open or closed is irrelevant. *See Winkler*, 552 N.W.2d at 352 (determining officer entry into an open garage also constitutes an illegal search). The majority also notes the presence of a clear front door in *Blumler*. Majority, ¶ 18. Here, the officer testified he did not check to see if the other side of the home had a door. Had he done so, he would have seen a door with a glass pane that appears to be an entryway. A step to this door was missing, but the record shows photos of this door and other external doors that provided access to the home without going through the garage.

[¶32] In analogizing this case to *Kitchen*, the majority determines in both cases "the most direct access to the home's threshold was through an enclosed space open to the public." Majority, ¶ 18. The majority extends the "fact-specific

inquiry" used to determine whether a "porch, vestibule, or entryway" is within the threshold of the home and applies it to garages. Majority, ¶ 14 (citing *Kitchen*, 1997 ND 241, ¶ 14). But the proper question is not whether the garage was the threshold of the home. We have consistently recognized a person has a reasonable expectation of privacy in a garage. *Kitchen*, ¶ 16; *Blumler*, 458 N.W.2d at 302; *Winkler*, 552 N.W.2d at 352. The correct question is whether the State has specific facts to overcome the presumed reasonable expectation of privacy in the garage. *See State v. Steele*, 2023 ND 220, ¶ 8, 997 N.W.2d 865 ("[A]fter the defendant has made a prima facie case [of an illegal search or seizure], the burden of persuasion is shifted to the State to justify its actions." (quoting *State v. Casson*, 2019 ND 216, ¶ 7, 932 N.W.2d 380)).

[¶33] For the State to prevail we would need facts showing the occupant did not have a reasonable expectation of privacy to the garage—meaning the occupant opened the area to use by the public. *Kochel*, 2008 ND 28, ¶ 9. Here, the State attempted to make that showing through evidence that another social worker on a prior visit accessed the home through the garage. While true that evidence is in the record—it misses the point that an occupant's reasonable expectation of privacy is not measured by what state actors do or have done. Rather, the test looks at what the occupant permits the public to do, and whether the State is simply replicating that access. *Kitchen*, 1997 ND 241, ¶ 15. Whether a reasonable expectation of privacy exists is a question of law reviewed de novo and the district court's findings in a motion to suppress are reviewed against the manifest weight of the evidence standard. *Id.* ¶¶ 11-12.

[¶34] In this case, the record contains no facts supporting a finding the public accessed the home through the garage. Instead, the majority erroneously relies on the following findings from the district court:

> [T]he primary entrance to the home was through the garage, which had been used repeatedly by social workers. The only other potential entrance would have required the officer to walk through the yard and approach the back of the residence. Moreover, the record does not clearly establish whether those alternative entrances were accessible . . . . *At the time, the garage entrance was open to the public and functioned as the main access point due to ongoing construction*

11

*at the home.* The officer had a legitimate purpose for being at the residence, as he was assisting Social Services with an assault investigation. When the officer arrived, the exterior garage door was open.

(Emphasis added.)

[¶35] The district court's findings contain three flaws, any one of which render its holding incorrect. First, a social worker, who was not present on the day, was said to have entered through the garage in the past. While evidence of what another state actor did on a prior visit to the property is in the record, that information provides neither evidence or an inference that Golberg expected members of the public to access the home by walking through the garage. The evidence only shows that the State made prior entry through the garage.

[¶36] Second, the record shows the home had several external doors that were not used by law enforcement to try to reach the occupant on the day of the search. The home was under construction at the time of the search, and the evidence was conflicting as to which exterior doors existed at that time. But what was not in conflict is that alternatives beside the garage existed for access to the home, and the garage was not the only way to access the home.

[¶37] Third, and most troubling, no facts show how the public accessed, entered, or knocked from inside the garage to the home. The majority's summary is that "Social workers and a detective went to the home of Golberg's then-girlfriend, Shantel Lais, to investigate whether Golberg assaulted Lais's daughter. They entered an open garage door, knocked on an interior entryway door, and were let into the home by Lais." Majority, ¶ 2. However, testimony before the district court was as follows:

Q. So what happened then?

A. I could see no front door on the front of the house. There was a—a new extension had been built on the front of the house. There was no other door. So the social worker, she was knocking on the outside. We heard nothing. The social worker then walked into the garage. I could hear a pit bull barking. She walked up to what would

12

be a screen door, which would lead into the kitchen of the house. She never went in, but she knocked on the door.

*Id*. ¶ 3.

[¶38] Under our rule of law, occupants enjoy a reasonable expectation of privacy in their garages, like the rest of their home. To overcome this protection, the State must show the garage was actually or impliedly open to the public—meaning the occupant objectively and subjectively expected the public to enter the garage to access the home. Here, the detective was the only witness at the suppression hearing. Majority, ¶ 3. His testimony provided no evidence Golberg or Lais permitted the public to enter the garage such that they would have no expectation of privacy in that space. Therefore, no facts support the district court's finding the garage was open to the public. Rather, the only evidence is that state actors entered through the garage to access the home. They should not have done so. Instead, they should have attempted to access the occupant using another door. Or they should have stopped outside the garage after knocking on the exterior garage door and receiving no invitation to enter.

[¶39] I would reverse and remand for findings on whether the occupants consented to the search inside the home after the detective's illegal entry into the garage. *See State v. Torkelsen*, 2008 ND 141, ¶ 24, 752 N.W.2d 640 (explaining proper consent to search after an illegal stop of an automobile); *see also United States v. Whisenton*, 765 F.3d 938, 941-43 (8th Cir. 2014) (analyzing whether illegal entry into the home tainted the defendant's consent to search the home).

[¶40] Daniel J. Crothers